```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION

THE   CINCINNATI   INDEMNITY
COMPANY,

       Plaintiff,

v.                                   Case No:  2:24-cv-471-JES-KCD

EVANSTON   INSURANCE   COMPANY
and   AIM   ENGINEERING    &
SURVEYING, INC.,

       Defendants.
_____
```

## OPINION AND ORDER

This matter comes before the Court on review of Defendant Evanston Insurance Company's Motion to Dismiss (Doc. #33) filed on July 29, 2024. Plaintiff filed a Memorandum of Law in Opposition (Doc. #34) on August 13, 2024, and Evanston Insurance Company filed a Reply (Doc. #37) on August 23, 2024. For the reasons set forth below, the motion is granted in part and denied in part.

**I.**

On October 26, 2022, the vehicle Ms. Carmel Koenig (Koenig) was driving was involved in a significant multiple car crash while stopped for heavy traffic due to the Corkscrew Road Widening construction improvement project. Koenig filed suit in state court against various defendants.

**A. Underlying Negligence Claim Against AIM**

On March 24, 2023, Koenig filed a negligence suit in state court against defendants AIM Engineering & Surveying, Inc. (AIM), Lee County Department of Transportation, Lee County Board of County Commissioners, Cougar Contracting, Inc., and Atkins North America (the Underlying Complaint). Koenig alleges in Count VI, her only claim against AIM, that AIM owed a duty of reasonable care in developing, installing and maintaining a safe and effective roadway for motorists along Corkscrew Road, but breached that duty on or about October 26, 2022, by:

> a. [F]ailing to maintain or adequately maintain the roadway in a reasonably safe condition;
>
> b. [F]ailing to warn or adequately warn of the dangerous roadway conditions that existed at the time of Plaintiff's incident;
>
> c. Failing to place barricades, caution signs, or other marking devices utilized to alert motorists of the dangerous roadway conditions that existed at the time of Plaintiff's incident;
>
> d. Failing to inspect or adequately inspect the roadway to ascertain whether dangerous roadway conditions existed at the time of Plaintiff's incident;
>
> e. Failing to correct or adequately correct the dangerous roadway conditions when the Defendant knew or should have known of their existence;
>
> f. Failing to take actions to reduce, minimize, or eliminate foreseeable risks before they manifested themselves as

>     particular dangerous conditions on the roadway;
>
>     g. Failing to comply with applicable codes, regulations, and/or standards.

(Doc. #33-1 at ¶ 32.)  The Underlying Complaint is currently pending in state court.

### B. AIM's Insurance Policies

At all relevant times, AIM had insurance policies with two different insurers potentially providing coverage for the state court negligence claim: The Cincinnati Indemnity Company (Cincinnati) and the Evanston Insurance Company (Evanston).  The record establishes the following relevant provisions of each policy.

### (1) The Cincinnati Policy

Cincinnati issued AIM a Commercial General Liability policy (the Cincinnati Policy) providing the following coverage for bodily injury and property damage:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

(Doc. #33-3 at 53.)

3

The Cincinnati Policy also provides two relevant exclusions relating to professional services. First:

> This insurance does not apply to 'bodily injury', 'property damage' or 'personal and advertising injury' for which the insured may be held liable because of the rendering of or failure to render professional services in the performance of any claim, investigation, adjustment, engineering, inspection, appraisal, survey or audit services.

(Id. at 83.) Second:

> This insurance does not apply to 'bodily injury', 'property damage' or 'personal and advertising injury' arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:
>
> a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and
>
> b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage', or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you or on your behalf with respect to the operations described above.

(Id. at 84.)

The Cincinnati Policy also contains the following provision concerning the situation where there is other insurance available to cover the loss:

> **5. Other Insurance**
>
> If other valid and collectible insurance is available for the insured for a loss we cover under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY or COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** of this Coverage Part, our obligations are limited as follows:
>
> **a. Primary Insurance**
>
> This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.
>
> **b. Excess Insurance**
>
> This insurance is excess over:
>
> (1) Any of the other insurance, whether primary, excess, contingent or on any other basis….
>
> (2) Any other primary insurance available to the insured covering liability for damages arising out of the premises or operations, or the products and completed operations, for which the insured has been added as an additional insured by attachment of an endorsement.
>
> (3) Any other insurance:
>
> (a) Whether primary, excess, contingent or on any other basis, except when such insurance is written specifically to be excess over this insurance; and
>
> (b) That is a consolidated (wrap-up) insurance program which has been provided by the prime

> contractor/project manager or owner of the consolidated project in which you are involved.
>
> When this insurance is excess, we will have no duty … to defend the insured….
>
> When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:
>
> (1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and
>
> (2) The total of all deductible and self-insured amounts under all that other insurance.
>
> We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.
>
> **c. Method of Sharing**
>
> If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.
>
> If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

(Id. at 66-67.)

**(2) The Evanston Policy**

Evanston issued AIM an errors and omissions policy (the Evanston Policy) providing the following coverage:

> To pay on behalf of the **Insured** for **Damages** and **Claims Expenses**, in excess of the Deductible, which the **Insured** shall become obligated to pay because of any **Claim** first made against the **Insured** during the **Policy Period** or **Optional Extension Period** (if applicable) and reported to Underwriters either during the **Policy Period**, within sixty (60) days after the expiration of the **Policy Period** or during the **Optional Extension Period** (if applicable) arising out of any act, error or omission in rendering or failure to render **Professional Services** by the **Insured** or by any person, including an independent contractor or consultant, for whose act, erroror [sic] omission the Insured Organization is legally responsible provided that such wrongful act was committed or alleged to have been committed on or after the Retroactive Date(s) stated in Item 6. of the Declarations.

(Doc. #33-2 at 13) (emphasis in original as defined terms). "[S]ubject to the Limit of Liability, exclusions and other terms and conditions of this Policy," the Evanston Policy imposed a duty to defend "any **Claim** against the **Insured** seeking **Damages** which are payable under the terms of this Policy, even if any of the allegations of the **Claim** are groundless, false or fraudulent." (Id. at 15.) Exclusions included faulty workmanship "performed in whole or in part by any **Insured** on any construction, erection, fabrication, installation, assembly, manufacture or remediation, including any materials, parts, labor or equipment furnished in connection with such repair or replacement."  (Id. at 18.)

7

Professional services meant "those services performed for others by or on behalf of the **Insured Organization** in the practice of architecture, engineering, land surveying, landscape architecture, interior design, project or construction management or envir1onmental consulting, or as set forth in endorsements to this Policy." (Id. at 24.)  The Evanston Policy applied in excess of:

> A. any other valid and collectible insurance available to any **Insured**, including, but not limited to, any project-specific professional liability and/or contractors' pollution liability insurance; and
>
> B. any self insured Deductible or Deductible portion thereof
>
> unless such other insurance is written only as specific excess insurance over the Limit of Liability of this Policy."

(Id. at 27.)

### C. Cincinnati's Declaratory Judgment Action

Although Cincinnati is currently covering the complete costs of AIM's defense, neither insurance company believes that it has a duty to defend or indemnify AIM on the Underlying Complaint. Given these conflicting positions, on April 16, 2024, Cincinnati filed a complaint in state court asserting it was in doubt as to its rights and obligations and seeking declaratory relief under Florida law regarding which insurer had the duty to defend and/or indemnify.  Evanston timely removed this state court action to federal court.

After removal, Cincinnati filed an Amended Complaint (Doc. #23), which is now the operative pleading. Cincinnati's Amended Complaint incorporates the exhibits attached to the original Complaint (Doc. #1-3)[1], including Koenig's Underlying Complaint as Exhibit A (Doc. #23, ¶ 9); a Professional Services Agreement with Lee County as Exhibit B (Id. at ¶ 11); the Cincinnati Policy as Exhibit C (Id. at ¶ 12); and the Evanston Policy as Exhibit D (Id. at ¶ 13).

Count I of the Amended Complaint seeks declaratory relief pursuant to Fla. Stat. § 86.011. (Doc. #23, ¶ 15.) Cincinnati asserts that based on the allegations in the Underlying Complaint, the Agreement for Professional Services, and the exclusions in the Cincinnati Policy, Cincinnati has no duty to defend or indemnify AIM on the Underlying Complaint. (Id. at ¶ 23.) Cincinnati further asserts that the Underlying Complaint alleges bodily injury arising out of professional services covered by the Evanston Policy, and that the bodily injury falls within the professional services exclusions in the Cincinnati Policy. (Id. at ¶¶ 23, 25.) The Amended Complaint further alleges that Evanston has taken the position that Evanston has no duty to defend or indemnify AIM because its policy only provides excess coverage to the coverage provided by the Cincinnati Policy. (Doc. #23, ¶ 22.)

---

[1] The Amended Complaint did not re-attach the Exhibits that were attached to the Complaint (Doc. #1) but references the same.

9

Count II of the Amended Complaint also seeks declaratory relief pursuant to Fla. Stat. § 86.011 as an alternative to Count I. Count II alleges that the Underlying Complaint makes some allegations regarding AIM's activities that could fall within the Cincinnati Policy's scope of coverage and outside of its professional services exclusion. In this situation, Cincinnati seeks a judgment that Evanston shares the duty to defend with Cincinnati.

In Count III, Cincinnati seeks contribution pursuant to Fla. Stat. § 624.2055 for the costs it has paid to defend AIM. This count is said to be in the alternative to Count I and in conjunction with Count II.

AIM filed an Answer and Affirmative Defenses (Doc. #26) to the Amended Complaint. Evanston now seeks dismissal of the Amended Complaint.

## II.

### A. Motion To Dismiss Legal Standards

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations

10

must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

In deciding whether a complaint states a claim upon which relief may be granted, a district court considers the factual allegations in the complaint, and exhibits attached to the complaint or incorporated into the complaint by reference. MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co., 40 F.4th 1295, 1303 (11th Cir. 2022) (citation omitted); Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000). A district court may also consider evidence outside the complaint if the evidence satisfies the incorporation-by-reference doctrine or is properly subject to judicial notice. Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Swinford v. Santos, __ F.4th __, 2024 WL 4661097, at *5 (11th Cir. Nov. 4, 2024). Under the incorporation-by-reference doctrine, extrinsic material that is referred to in the operative complaint and attached to a motion to dismiss may be considered by the court if the material is central

11

to the plaintiff's claim and its authenticity is not challenged. Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002); Jackson v. City of Atlanta, Georgia, 97 F.4th 1343, 1350 (11th Cir. 2024). This includes, for example, an insurance policy that the insurer attaches only to a motion to dismiss. Julmist v. Prime Ins. Co., 92 F.4th 1008, 1016 (11th Cir. 2024). A district court may also consider an exhibit not mentioned in, nor attached to, a complaint if it is central to the plaintiff's claims and is undisputed in terms of authenticity. Maxcess, Inc. v. Lucent Techs., Inc., 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) (district court properly considered such a Purchase Agreement when ruling on a Rule 12(b)(6) motion to dismiss).

**B. Florida Declaratory Judgment Principles**

Counts I and II of the Amended Complaint seek declaratory relief under Florida law.

> A party that is "in doubt about its rights under a contract or other instrument may seek a judicial declaration" to determine those rights. People's Tr. Ins. Co. v. Valentin, 305 So. 3d 324, 327 (Fla. 3d DCA 2020). "[Q]uestions of fact and disagreements concerning coverage under insurance policies are proper subjects for a declaratory judgment if necessary to a construction of legal rights." Travelers Ins. Co. v. Emery, 579 So. 2d 798, 801 (Fla. 1st DCA 1991).

Comisar v. Heritage Prop. & Cas. Ins. Co., 344 So. 3d 46, 47 (Fla. 4th DCA 2022). "A declaratory judgment is a statutorily created remedy." Martinez v. Scanlan, 582 So. 2d 1167, 1170 (Fla. 1991).

Chapter 86, Florida Statutes, governs declaratory actions and its provisions are both substantive and remedial. Fla. Stat. § 86.101. The requirements for a declaratory judgment action in Florida are well-settled.

> To survive a motion to dismiss, a party seeking declaratory relief must show:
>
> There is a bona fide, actual, present practical need for the declaration; that the declaration should deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts; that some immunity, power, privilege or right of the complaining party is dependent upon the facts or the law applicable to the facts; that there is some person or persons who have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law; that the antagonistic and adverse interest[s] are all before the court by proper process or class representation and that the relief sought is not merely giving of legal advice by the courts or the answer to questions propounded from curiosity.
>
> Coal. for Adequacy and Fairness in Sch. Funding v. Chiles, 680 So. 2d 400, 404 (Fla. 1996) (quoting Santa Rosa County v. Admin. Comm'n, Div. of Admin. Hearings, 661 So. 2d 1190, 1192–93 (Fla. 1995)). "The test of the sufficiency of a complaint in a declaratory judgment proceeding is not whether the complaint shows that the plaintiff will succeed in getting a declaration of rights in accordance with his theory and contention, but whether he is entitled to a declaration of rights at all." Golf Club of Plantation, Inc. v. City of Plantation, 717 So. 2d 166, 171 (Fla. 4th DCA 1998) (quoting Rosenhouse v. 1950 Spring Term Grand Jury, in and for Dade Cnty., 56 So. 2d 445, 448 (Fla. 1952)).

Comisar, 344 So. 3d at 48.

13

**C. Evanston's Asserted Grounds for Dismissal**

As part of its "Factual Background" section, Evanston makes reference to the differences in the allegations of Cincinnati's original Complaint and its Amended Complaint. (Doc. #33 at pp. 7-8.) These differences have no bearing on the current motion to dismiss. An amended complaint supersedes the former complaint, and the original allegations are no longer a part of the averments. Hoefling v. City of Miami, 811 F.3d 1271, 1277 (11th Cir. 2016).

Evanston also contends that a district court is normally limited to a review of the four corners of a complaint and the documents attached to the complaint. (Doc. #33 at 10.) This becomes the "eight corners rule" when considering the four corners of the relevant insurance policy and the four corners of the Underlying Complaint. (Id. at 11.)

Evanston notes that Cincinnati relies on the Agreement for Professional Services (the Agreement) as the sole basis for its position that Cincinnati has no duty to defend AIM on the Underlying Complaint. (Id. at 13.) Evanston also correctly notes that the Agreement is extrinsic evidence that was not referenced in the Underlying Complaint. (Id.) From this, Evanston argues that the Court may not consider the Agreement at the motion to dismiss stage of this proceeding. (Id. at 13-14.)

According to Evanston, the allegations in the Underlying Complaint fall squarely within the coverage provided by the

14

Cincinnati Policy. (Id. at 2.) Comparing only the four corners of the Cincinnati Policy with the four corners of the Underlying Complaint, Evanston argues that there is no evidence that the professional services exclusions of the Cincinnati Policy vitiate Cincinnati's duty to defend AIM on the Underlying Complaint. (Id. at 17-18.) Evanston continues that under the eight corners rule Cincinnati's duty to defend has been triggered, and "[e]ven if some of AIM's alleged acts constituted rendering or failing to render professional services, which may fall within one or more coverage exclusions (and that is far from clear at this stage), Cincinnati is still required to defend AIM in the Underlying Action." (Id. at 18.)

Evanston is correct that the duty to defend is dependent upon the allegations in the Underlying Complaint, not the actual facts which are developed during that underlying proceeding.

> An insurer's duty to defend an insured in a legal action under Florida law "arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage." Jones v. Fla. Ins. Guar. Ass'n, 908 So. 2d 435, 442–43 (Fla. 2005).
>
> Even if the allegations in the complaint are meritless, the duty to defend nonetheless arises; all doubts about whether the duty to defend applies are resolved in favor of the insured. Id. at 443. However, an insurer does not need to defend an insured if a policy exclusion applies. Keen v. Fla. Sheriffs' Self-Ins. Fund, 962 So. 2d 1021, 1024 (4th Fla. DCA 2007). Finally, the insured has the initial burden to establish that a policy coverage applies, but then "the burden shifts

15

> to the insurer to prove that the loss arose from a cause which is excepted." Hudson, 450 So. 2d at 568.

Westchester Gen. Hosp., Inc. v. Evanston Ins. Co., 48 F.4th 1298, 1302 (11th Cir. 2022). Evanston is incorrect, however, in arguing that the Agreement is a document which may not be considered in deciding the motion to dismiss the federal case.

Evanston's motion to dismiss does not seek to dismiss the Underlying Complaint. Rather, the motion to dismiss is aimed at the subsequent declaratory judgment complaint which was removed to federal court. The original Complaint does attach both insurance policies as well as the Underlying Complaint and the Agreement even if not resubmitted as attachments to the Amended Complaint. Therefore, the Court may clearly consider the Agreement and the policies in deciding the motion to dismiss.

After considering these documents, the Court finds that Cincinnati has stated plausible claims for declaratory relief, and therefore the motion to dismiss will be denied. While the Amended Complaint may or may not survive at subsequent stages of this proceeding, it is sufficient under the motion to dismiss standards discussed above. The claim is facially plausible because it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

16

Evanston also argues that the Evanston Policy is an excess policy, so that Cincinnati has the primary obligation to defend AIM and Evanston has no obligation to reimburse Cincinnati for any defense costs Cincinnati has incurred. (Doc. #33 at 22-23.) "'Generally, courts disfavor resolving issues involving contract interpretation at the motion to dismiss stage.'" Capitol Specialty Ins. Corp. v. Rubio Ortiz by & Through Lara Corona, No. 17-23329-CIV, 2018 WL 7291057, at *3 (S.D. Fla. Apr. 20, 2018) (citing Evanston Ins. Co. v. Gaddis Corp., 145 F. Supp. 3d 1140, 1145 (S.D. Fla. 2015)). The Court finds that issues of reimbursement and contribution are beyond the scope of the motion to dismiss.

Finally, Evanston argues that Cincinnati's claim with respect to duty to indemnify is premature since the underlying action has not been resolved. (Doc. #33, at 2.) "[N]o action for declaratory relief will lie to establish an insurer's liability ... until a judgment has been rendered against the insured since, until such judgment comes into being, the liabilities are contingent and may never materialize." Allstate Ins. Co. v. Emp'rs Liab. Assur. Corp., 445 F.2d 1278, 1281 (5th Cir. 1971). A district court does not abuse its discretion in concluding that a claimed duty to indemnify is unripe and dismissing the complaint. Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc., 766 F. App'x 768, 770 (11th Cir. 2019); Employers Ins. Co. of Wausau v.

17

Pool, No. 22-13249, 2023 WL 4230892, at *2 (11th Cir. June 28, 2023).

"Courts in this circuit have overwhelmingly held that the question of an insurer's duty to indemnify is not ripe until the underlying lawsuit is resolved, or the insured's liability is established, because unless and until that occurs there is no judgment to indemnify." Travelers Prop. Cas. Co. of Am. v. H.E. Sutton Forwarding Co., LLC, 688 F. Supp. 3d 1138, 1150 (M.D. Fla. 2023) (collecting cases).  The court will dismiss the declaratory judgment claim to the extent it involves an alleged duty to indemnify.

Accordingly, it is now

**ORDERED**:

Defendant's Motion to Dismiss (Doc. #33) is **GRANTED** as to the duty to indemnify (Count II), which is dismissed without prejudice, and **DENIED** as to the duty to defend (Count I).

**DONE AND ORDERED** at Fort Myers, Florida, this ___6th___ day of December 2024.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Parties of record